UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

FRANKLIN DAEL SANCHEZ GONZALEZ,

Petitioner,

v.

JASON KNIGHT, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General; MIKE HOLLINSHEAD, Sheriff of Elmore County,

Respondents.

Case No. 1:26-cv-00535-AKB

**ORDER DENYING PETITION FOR HABEAS CORPUS**

Pending before the Court is Petitioner Franklin Dael Sanchez Gonzalez's Petition for Writ of Habeas Corpus (Dkt. 1) and Motion for Temporary Restraining Order (TRO) (Dkt. 2). For the reasons explained below, the Court denies the Petition and denies the TRO as moot.

## I. BACKGROUND

Petitioner, a native of Mexico, has lived in the United States since his entry without inspection in 2022 (Dkt. 1 ¶ 1). On August 15, 2026, Immigration and Customs Enforcement (ICE) agents placed an immigration detainer on Petitioner while he was detained at the Ada County Jail in Idaho on a warrant for driving without a license (Dkt. 6 at 3). Petitioner was subsequently taken into ICE custody on August 18 (*id.*). That same day, ICE conducted an initial custody determination under 8 U.S.C. § 1226(a), finding Petitioner to be a flight risk (Dkt. 1 ¶ 3; Dkt. 6-3

at 1). ICE served Petitioner with a notice to appear (Form I-862), warrant for arrest (Form I-200), and notice of custody determination (Form I-286) (Dkt. 6 at 3–4). Petitioner requested a review of the custody determination by an immigration judge (IJ) (*id.* at 4). At the time the petition was filed, Petitioner was detained at the Elmore County Jail in Mountain Home, Idaho (*id.* at 1).

On August 19, Petitioner filed a petition for habeas relief, arguing his detention was unlawful because ICE failed to conduct an individualized initial custodial determination (Dkt. 1 ¶ 3). On August 21, the Court ordered Respondents to respond to Petitioner's petition (Dkt. 5). On September 3—before the Court issued a decision on the underlying habeas petition—Petitioner had a bond hearing before an IJ, at which he was denied bond (Dkt. 9 at 1). Counsel filed supplemental briefing addressing the hearing (*id.*; Dkt. 13). Briefing is now complete, and the issue is ripe for a decision.

## II. ANALYSIS

The Court has addressed countless immigration-habeas petitions over the last ten months, all relating to the detention provisions at §§ 1226(a) and 1225(b)(2). Until recently, ICE treated every noncitizen who entered without inspection as subject to mandatory detention under § 1225(b)(2)(A)—regardless of when they were apprehended or how long they had lived in the United States. *See Guadarrama Ayala v. Henkey*, No. 25-cv-00682-AKB, 2025 WL 3754138 (D. Idaho Dec. 29, 2025). The Ninth Circuit has now definitively ruled that § 1226 applies to unadmitted aliens present in the interior of the country, while § 1225 applies to unadmitted aliens entering the United States at the border. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1169 (9th Cir. July 30, 2026). ICE has since received updated guidance about reassessing custody of detainees under § 1226(a) pursuant to *Rodriguez Vazquez*. *See* Declaration of Jared D. Callahan ¶ 10, *Sanchez Ramirez v. Knight*, No. 26-cv-00498-AKB (D. Idaho Aug. 12, 2026), Dkt. No. 9-1.

Unlike previous petitions, in which the Court held the petitioner's detention was governed by § 1226(a)—not § 1225(b)(2)(A)—Petitioner was detained under § 1226(a) from the outset (Dkt. 1 ¶ 7; Dkt. 2-1 at 6). Respondents maintain that ICE provided Petitioner with the process due under § 1226(a), and therefore no due process violation occurred (Dkt. 5 at 1–2).

**A. Initial Custody Determination**

The Court first considers whether Petitioner's initial detention comported with § 1226(a) and the regulations governing Petitioner's detention. The Court finds that it does.

To determine whether a due process violation occurred, the Court begins with the regulatory framework governing an alien's initial detention and custody determination under § 1226(a). Section 1226(a) permits the government to detain a noncitizen pending a decision on whether the noncitizen should be removed. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); 8 C.F.R. § 236.1(c)(8). The alien will be released if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." § 236.1(c)(8).

Here, Petitioner contends his initial custody determination was not individualized because ICE did not provide counsel with a basis for its conclusion that Petitioner is a flight risk (Dkt. 1 ¶¶ 3, 15). Although Respondents do not expressly connect Petitioner's criminal history to ICE's determination that he is a flight risk, they provide sufficient information for the Court to conclude that the determination was individualized. Respondents identify six prior criminal adjudications between June 2023 and May 2026, all involving traffic or licensing violations, and explain that Petitioner came into contact with local law enforcement on August 15, 2026, after officers stopped him for a traffic violation and determined that he was driving without a valid license and had an

outstanding warrant for driving without a license (Dkt. 6 at 2–3). Petitioner was arrested on that warrant, and ICE subsequently took him into custody (*id.* at 3). These circumstances, considered together, provide a sufficient basis to conclude that ICE's determination was based on Petitioner's individual circumstances rather than made without regard to his particular circumstances. Thus, the record does not establish that ICE's initial custody determination violated Petitioner's rights.[1]

**B. September 3 Bond Hearing**

While this petition was pending, Petitioner received a bond hearing before an IJ on September 3, 2026 (Dkt. 9 at 1). Petitioner was denied bond (*id.* at 1–2). Following the hearing, the Court permitted supplemental briefing to address what occurred at the hearing. Petitioner argues that the alleged due process violations flowing from his bond hearing provide independent grounds for habeas relief (*id.* at 5). Before the Court can address whether a constitutional violation occurred, it must consider whether Petitioner must first exhaust his administrative remedies before seeking habeas review of those claims.

After an initial custody determination, an alien may seek an individualized bond hearing before an IJ, 8 C.F.R. § 236.1(d)(1), which must be scheduled at "the earliest possible date," *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1226 (S.D. Cal. 2019) (quoting Immigration Court Practice Manual, Chapter 9.3(d)). At the bond hearing, the alien has the burden of demonstrating by a preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Rodriguez Diaz*, 53 F.4th at 1197. The IJ's decision may then be appealed to the Board of Immigration Appeals (BIA). § 236.1(d)(3). If the BIA affirms, the detainee may seek habeas relief in federal district

---

1 Because the Court finds that Petitioner's rights were not violated, it need not reach his arguments pertaining to exhaustion of administrative remedies as to that claim.

court. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). While district courts have jurisdiction to review bond determinations for constitutional error, *Rodriguez Diaz*, 53 F.4th at 1209, district courts may not review discretionary judgments regarding the detention and release of noncitizens in removal proceedings under § 1226(a), § 1226(e). Under an abuse of discretion standard, the Court "cannot reweigh evidence, but can only determine whether the BIA applied the correct legal standard." *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011), *abrogated on other grounds by Rodriguez Diaz*, 53 F.4th 1189 (9th Cir. 2022). That is, the necessity of administrative exhaustion in § 2241 actions is governed by sound judicial discretion. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), s*uperseded by statutory amendment as noted in Booth v. Churner*, 532 U.S. 731, 738 (2001). Nevertheless, "[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35–36, n.5 (2006).

Once a detainee receives a bond hearing before an IJ, he may appeal the IJ's decision to the BIA. *Leonardo*, 646 F.3d at 1159. If the detainee disagrees with the BIA's decision, he may "file a habeas petition in the district court" to challenge his continued detention. *Id.* Thereafter, "the district court's decision on the habeas petition may be appealed" to the Ninth Circuit. *Id.* The Ninth Circuit has explained that seeking habeas review of an IJ's adverse bond determination before appealing to the BIA is an improper "short cut." *Id.* at 1160. The Ninth Circuit has likewise held that a petitioner must exhaust administrative remedies before raising constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal. *Rojas-Garcia v.*

*Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160.

Courts may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981)). The party seeking to excuse exhaustion bears the burden of establishing a basis for doing so. *Aden v. Nielsen*, No. 18-cv-1441, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Here, the Government argues that Petitioner must first exhaust his administrative remedies before seeking habeas relief. Because Petitioner has not yet appealed the IJ's decision, the Court must either dismiss his petition without prejudice or stay the proceedings until he has exhausted remedies unless he can demonstrate one of the *Laing* factors excusing exhaustion.

Petitioner argues that an appeal to the BIA would be futile because a majority of the BIA's recent decisions have favored DHS (Dkt. 9 at 4–5). He also contends that exhaustion would cause irreparable harm because the median waiting time for a BIA decision is 216 days (*id.* at 4–5). More specifically, Petitioner asserts that his continued detention violates his due process rights and forces him to litigate his underlying removal case on an "unfair and ridiculously expedited detained docket" (*id.* at 3–4).

Neither argument establishes a basis to excuse exhaustion. First, Petitioner's generalized assertion that the BIA has frequently ruled in DHS's favor does not establish that an appeal in his

case would be futile. Futility may excuse exhaustion when the agency has already staked out its position on the relevant question, making the outcome of administrative review a foregone conclusion. *Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004). Petitioner has not shown that the BIA has predetermined the issues he seeks to raise concerning his individual bond hearing. His disagreement with the BIA's general decisional record does not establish that the administrative process would be futile in his case.

Second, the anticipated delay in obtaining a BIA decision and Petitioner's continued detention do not, without more, establish irreparable injury sufficient to excuse exhaustion. In *Martinez v. Scott*, the district court rejected similar arguments based on a projected six-to-twelve-month delay in BIA review and the petitioner's continued detention following a bond hearing. No. 25-CV-01538, 2025 WL 2689844, at *6 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025). The court explained that the mere delay associated with administrative review does not establish that the available remedies are inadequate or that continued detention constitutes irreparable harm excusing exhaustion. *Id.* at *6–7. In contrast, the court in *Ortega-Rangel v. Sessions* waived the exhaustion requirement upon petitioner's showing that continued detention would interfere with her ability to present a defense in her ongoing criminal prosecution and to care for her nine-year-old daughter. 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018). There, the court also emphasized that, other than the one pending criminal charge, petitioner had no criminal record and had lived in the United States for eighteen years. *Id.* The court therefore found that petitioner successfully demonstrated irreparable harm. *Id.*

Here, Petitioner's allegations are more akin to those in *Martinez* than in *Ortega-Rangel*. As in *Martinez*, Petitioner relies on the anticipated delay in administrative review and his continued

detention, without identifying additional circumstances demonstrating irreparable injury. And unlike *Ortega-Rangel*, Petitioner has not shown that detention will cause specific, consequential harm beyond the burdens associated with litigating removal proceedings while detained. Moreover, even if released, Petitioner would remain subject to removal proceedings. *See* § 1226(a). Accordingly, Petitioner has not demonstrated irreparable injury sufficient to excuse exhaustion.

Petitioner's remaining assertions do not alter the analysis. His claim that continued detention violates due process assumes the constitutional violation he asks the Court to find. The Court rejects that argument because it "begs the constitutional questions presented in his petition by assuming that petitioner has suffered a constitutional injury." *See Francisco Cortez v. Nielsen*, No. 19-cv-00754, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019) (rejecting irreparable harm argument premised on allegedly unconstitutional bond hearing at issue in underlying habeas petition). Petitioner's concern about litigating his removal case while detained is likewise insufficient. To be clear, even if the Court ordered his immediate release, Petitioner would still be subject to removal proceedings. *See* § 1226(a) (authorizing detention pending a decision on removability). Unlike *Ortega-Rangel*, in which detention demonstrably interfered with petitioner's ability to defend other proceedings, Petitioner has not shown how the pace of his removal proceedings independently establishes that an appeal to the BIA would be futile or that exhaustion should be excused. *See Ortega-Rangel,* 313 F. Supp. 3d at 1003.

Accordingly, Petitioner has not established that exhaustion should be excused on grounds of futility or irreparable harm.

Because the Court finds that the prudential exhaustion of administrative remedies is required, and that Petitioner has failed to establish any valid exception to the exhaustion

requirement, the Court need not address Petitioner's allegations of constitutional violations at the September 3 hearing. The Court notes, however, that the absence of a recording, standing alone, does not establish a due process violation. Petitioner has not identified, nor is the Court aware of, any requirement under § 1226(a), the applicable regulations, or the Due Process Clause that an immigration bond hearing be recorded as a matter of course. Indeed, the IJ is not required to create a written decision unless and until there is an appeal to the BIA. *See* Immigration Court Practice Manual, Chapter 8.3(e)(7) (explaining that the IJ's decision "is rendered orally" and that "if either party appeals, the [IJ] prepares a written decision based on notes from the hearing"). Similarly, the BIA has recognized no right to a transcript of a bond redetermination hearing. *Matter of Chirinos*, 16 I&N Dec. 276, 277 (BIA 1977). As the Government correctly notes, Petitioner could have initiated the process for obtaining a written decision and administrative review by appealing to the BIA (Dkt. 13 at 2). Instead, he asks the Court to find a due process violation based on counsel's affidavit, without the benefit of the IJ's written decision or an administrative record developed through the appellate process. Thus, Petitioner faults the Immigration Court for lacking a record when he bypassed the process designed to create one.

The Court expresses no opinion on Petitioner's remaining allegations concerning the IJ's consideration of evidence, explanation for denying bond, conduct during the hearing, or application of the relevant bond factors. Petitioner may raise those challenges through the available administrative process and, if appropriate, seek habeas relief after exhausting his administrative remedies. *See Leonardo*, 646 F.3d at 1160. Because Petitioner has not appealed the IJ's decision or established a basis to excuse exhaustion, the Court declines to consider his constitutional challenges to the bond hearing at this time.

Petitioner is entitled to the process due under § 1226(a) and the regulations governing his detention. As a noncitizen detained under § 1226(a), Petitioner has a statutory right to a bond hearing. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). On September 3, Petitioner received that hearing. Petitioner has not demonstrated that Respondents have denied him that process or otherwise failed to follow the procedures governing his detention. The petition must therefore be dismissed.

## III. ORDER

**IT IS ORDERED that:**

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED WITHOUT PREJUDICE.**

2. Petitioner's Motion for Temporary Restraining Order (Dkt. 2) is **DENIED AS MOOT.**

3. Petitioner's Motion to File Exhibits F and G Under Seal (Dkt. 12) is **GRANTED.** The filings at Docket 10 and 11 are hereby **SEALED**.

4. The provisions of the Court's prior order preserving the status quo (Dkt. 5) are **DISSOLVED** upon entry of judgment in this action.

DATED: October 14, 2026

Amanda K. Brailsford
U.S. District Court Judge